IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| Plaintiff, : | Case No. 3:07cr165 |
| vs. : | JUDGE WALTER HERBERT RICE |
| JESSE LEE WALTERS, : | |
| Defendant. : | |

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS INDICTMENT (DOC. #18)

Defendant Jesse Lee Walters ("Defendant" or "Walters") is charged in the Indictment (Doc. #11) with one count of failing to register, as required by the Sex Offender Registration and Notification Act ("SORNA"), in violation of 18 U.S.C. § 2250(a).  In particular, the Indictment alleges that between on or about January 18, 2007 and August 22, 2007, Walters knowingly failed to register and to update a registration, as required by SORNA.

This case is before the Court on the Defendant's Motion to Dismiss the Indictment (Doc. #18).  Therein, the Defendant argues that the Indictment must be dismissed, because the registration requirements of SORNA did not become applicable to him until February 28, 2007, when the Attorney General of the United States adopted an interim regulation, dealing with SORNA's applicability to

convictions occurring prior to the Act's effective date.  He points out, therefore, that a portion of the time, during which he is alleged to have violated § 2250(a) by failing to comply with those requirements, occurred before the applicability of that regulation to him.  Walters also argues that § 2250(a) is unconstitutional as applied to him, because it would violate the Ex Post Facto Clause of the Constitution.  The Government, in contrast, argues that the registration requirement of SORNA became applicable to the Defendant, when that statute became effective on July 27, 2006, before the period set forth in the Indictment, during which he is alleged to have failed to register and to update a registration.  See Doc. #19.  The Court begins its analysis, by reviewing the pertinent provisions in the Stipulations (Doc. #17) filed by the parties.

On May 9, 1997, the Defendant was convicted of engaging in lewd and lascivious acts with a child under the age of 14, in violation of California law.  He was subsequently sentenced to a three-year term of imprisonment.  Walters' conviction subjected him to the lifetime requirement under California law that he register as a sex offender.  Upon his release from prison on parole, the Defendant registered with the Santa Cruz County, California, Sheriff's Office, in September, 1999.  He last registered with that office on January 18, 2007.  On the registration form which the Defendant submitted on that occasion, he acknowledged that, under California law, he was required to inform the Santa Cruz Sheriff's Office five days before moving, and to register in any state to which he moved within 10 days of moving to that state.  After January 18, 2007, but before February 27, 2007, Walters left California for Ohio.  Although he was found in Ohio on March 6, 2007, he did not register in this state until August 22, 2007.

The statute which the Defendant is charged with violating, 18 U.S.C. § 2250(a), provides:

> (a) In general.—Whoever–
> (1) is required to register under the Sex Offender Registration and Notification Act;
> (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
> (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
>
> shall be fined under this title or imprisoned not more than 10 years, or both.

The registration requirements are set forth in § 113 of SORNA, Pub. L. 109-248, 120 Stat. 587, 593-94 which provides:

> (a) In general
> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.
> (b) Initial registration
> The sex offender shall initially register--
> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or
> (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment.
> (c) Keeping the registration current
> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) of this section and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That

>>jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.
>
>(d) Initial registration of sex offenders unable to comply with subsection (b) of this section
>>The Attorney General shall have the authority to specify the applicability of the requirements of this title to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction, <u>and</u> to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

42 U.S.C. § 16913 (emphasis added). Both of the quoted statutory provisions became effective on July 27, 2006. The Attorney General has adopted an interim regulation, effective on February 28, 2007 (<u>see</u> 72 Fed. Reg. 8894 (February 28, 2007)), which provides that "[t]he requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 28.3.

Subsection 113(d) of SORNA authorizes the Attorney General "to specify the applicability of the requirements of this title to sex offenders convicted before July 27, 2006 or its implementation in a particular jurisdiction,"[1] <u>and</u> "to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section." To resolve the parties' arguments concerning the Defendant's motion, this Court must construe that statutory provision. In particular, the Defendant contends that subsection 113(d) of SORNA must be interpreted as applying to all sex offenders who were convicted prior to July 27, 2006, and that the requirements of SORNA

---

[1] The word "title" therein refers to Title I of SORNA, which is codified at 42 U.S.C. §§ 169101-16962 and 18 U.S.C. § 2250. <u>See</u> 120 Stat. 587-88 (Table of Contents for Title I).

- 4 -

(including reporting requirements) are not applicable until the Attorney General has so specified.  Therefore, the Defendant's argument continues, the reporting requirements contained in SORNA did not apply to him until February 28, 2007, the effective date of the interim regulation adopted by the Attorney General.  The Government, in contrast, argues that subsection 113(d) is merely a gap-filling measure, addressing the issue of those sex offenders who were not previously able to comply with the initial registration requirement set forth in subsection 113(b).  Since the parties have stipulated that the Defendant initially registered in California in September, 1999, the Government's argument continues, Walters does not come within the class of sexual offenders affected by subsection 113(d), and he was required to comply with the registration requirements set forth in SORNA upon the effective date of that statute, July 27, 2006, rather than upon the effective date of the Attorney General's interim regulation, February 28, 2007.  For reasons which follow, this Court concludes that the registration requirements of SORNA were not applicable to the Defendant, until the Attorney General adopted the interim regulation on February 28, 2007.

In Chrysler Corp. v. C.I.R., 436 F.3d 644 (6th Cir. 2006), the Sixth Circuit reiterated familiar principles of statutory construction:

> Turning to the task at hand, we note that legislative intent should be divined first and foremost from the plain language of the statute.  Broadcast Music, [Inc. v. Roger Miller Music, Inc., 396 F.3d 762, 769 (6th Cir.), cert. denied, 546 U.S. 871 (2005)]; Limited, [Inc. v. Comm'r, 286 F.3d 324, 332 (6th Cir. 2002)].  If the "text of the statute may be read unambiguously and reasonably," our inquiry is at an end.  Limited at 332; accord United States v. Boucha, 236 F.3d 768, 774 (6th Cir. 2001) ("[t]he language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear") (quoting United States v. Choice, 201 F.3d 837, 840 (6th Cir. 2000)).

Id. at 654.  Herein, subsection 113(d) unambiguously, clearly and explicitly provides that the Attorney General shall have the authority, inter alia, "to specify the applicability of the requirements of this title to sex offenders convicted before July 27, 2006."  In other words, Congress decided to vest the Attorney General with the discretion to decide whether sex offenders convicted before the effective date of the legislation would be subject to it.  Rather than embracing that Congressional grant of discretion, the Government contends that Walters was subject to the registration requirements of SORNA on the date it became effective, because the subsection 113(d) language "does not show a legislative intent to exclude such offenders wholesale from the scope of SORNA unless the Attorney General issues some rule to include them."  Doc. #19 at 7 (emphasis in the original).  The Government asserts that this subsection is meant to be a gap-filing measure in relation to subsection 113(b) of SORNA.  Id.  The Government supports that proposition by referring to the caption of subsection 113(d), as well as the cross reference to subsection 113(b) therein.  Id.  This Court is not convinced.

The caption of subsection 113(d), which provides "[i]nitial registration of sex offenders unable to comply with subsection (b) of this section," seemingly supports the Government's construction of that statutory provision, since the caption indicates that the statute addresses a class of individuals of which the Defendant is not a member, since the Defendant was able to and did register upon his release from prison in California.  However, subsection 113(d), itself, is much broader than that.  That statutory provision grants two categories of authority to the Attorney General.  First, the cabinet officer is authorized "to specify the applicability of the requirements of this title to sex offenders convicted before July

- 6 -

27, 2006, or its implementation in a particular jurisdiction." Second, the Attorney General is given the authority "to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section." Only the second category of authority addresses the topic set forth in the caption. If this Court were to construe subsection 113(d) coextensively with its caption, it would ignore the first grant of authority contained therein and, thus, violate the tenet of statutory construction that it is the duty of courts "to give effect, if possible, to every clause and word of a statute." Duncan v. Walker, 533 167, 174 (2001) (internal quotation marks and citations omitted). The Government has not suggested that it impossible to give effect to the first category of authority granted to the Attorney General by subsection 113(d).

Moreover, the Supreme Court has repeatedly cautioned against utilizing the title of a statute or the heading of a section as an aid to statutory construction. In Brotherhood of R.R. Trainmen v. Baltimore & Ohio R. Co., 331 U.S. 519 (1947), the Supreme Court explained:

> That the heading of § 17 fails to refer to all the matters which the framers of that section wrote into the text is not an unusual fact. That heading is but a short-hand reference to the general subject matter involved. While accurately referring to the subjects of Commission procedure and organization, it neglects to reveal that § 17 also deals with judicial review of administrative orders and with intervention by employee representatives. But headings and titles are not meant to take the place of the detailed provisions of the text. Nor are they necessarily designed to be a reference guide or a synopsis. Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner; to attempt to refer to each specific provision would often be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the headings and titles. Factors of this type have led to the wise rule that the title of a statute and the heading of a section cannot limit the plain meaning

- 7 -

> of the text. <u>United States v. Fisher</u>, 2 Cranch 358, 386; <u>Cornell v. Coyne</u>, 192 U.S. 418, 430; <u>Strathearn S.S. Co. v. Dillon</u>, 252 U.S. 348, 354. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

> of the text. <u>United States v. Fisher</u>, 2 Cranch 358, 386; <u>Cornell v. Coyne</u>, 192 U.S. 418, 430; <u>Strathearn S.S. Co. v. Dillon</u>, 252 U.S. 348, 354. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

<u>Id</u>. at 528-29. That decision supports the proposition that subsection 113(d) is not limited to the subject mentioned in its caption.

Accordingly, this Court cannot conclude that the caption of subsection 113(d) limits its applicability to sexual offenders who were unable to comply with the initial registration requirement contained in subsection 113(b). Rather, that section is also pertinent to the applicability of the legislation to sex offenders convicted prior to July 27, 2006.

In addition, while this Court agrees with the Government that subsection 113(d) cross references to subsection 113(b), that cross reference is contained in the second grant of authority to the Attorney General and does not in any manner limit or refer to the Attorney General's authorization "to specify the applicability of the requirements of this title to sex offenders convicted before July 27, 2006." As is indicated above, this Court is not permitted to construe a statute in a manner which fails to give effect to all portions of that statute. If this Court were to conclude, because of that cross reference, that subsection 113(d) is only a gap-filling measure for subsection 113(b), it would be required to ignore the initial grant of authority contained therein "to specify the applicability of the requirements of this title to sex offenders convicted before July 27, 2006."

In support of its position, the Government also cites the commentary which accompanied the issuance of the interim regulation. <u>See</u> 72 Fed. Reg. 8894, 8895-96 (February 28, 2007). That commentary rejected the proposition that sex

> of the text. <u>United States v. Fisher</u>, 2 Cranch 358, 386; <u>Cornell v. Coyne</u>, 192 U.S. 418, 430; <u>Strathearn S.S. Co. v. Dillon</u>, 252 U.S. 348, 354. For interpretative purposes, they are of use only when they shed light on some ambiguous word or phrase. They are but tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain.

<u>Id</u>. at 528-29. That decision supports the proposition that subsection 113(d) is not limited to the subject mentioned in its caption.

Accordingly, this Court cannot conclude that the caption of subsection 113(d) limits its applicability to sexual offenders who were unable to comply with the initial registration requirement contained in subsection 113(b). Rather, that section is also pertinent to the applicability of the legislation to sex offenders convicted prior to July 27, 2006.

In addition, while this Court agrees with the Government that subsection 113(d) cross references to subsection 113(b), that cross reference is contained in the second grant of authority to the Attorney General and does not in any manner limit or refer to the Attorney General's authorization "to specify the applicability of the requirements of this title to sex offenders convicted before July 27, 2006." As is indicated above, this Court is not permitted to construe a statute in a manner which fails to give effect to all portions of that statute. If this Court were to conclude, because of that cross reference, that subsection 113(d) is only a gap-filling measure for subsection 113(b), it would be required to ignore the initial grant of authority contained therein "to specify the applicability of the requirements of this title to sex offenders convicted before July 27, 2006."

In support of its position, the Government also cites the commentary which accompanied the issuance of the interim regulation. <u>See</u> 72 Fed. Reg. 8894, 8895-96 (February 28, 2007). That commentary rejected the proposition that sex

offenders convicted prior to July 27, 2006, were not required to register under SORNA until the Attorney General issued regulations indicating that such offenders were subject to that statute. Id. at 8896. The commentary indicated further that the interim regulation had been adopted only to foreclose such an argument. Id. Therein, the Attorney General also noted that, in adopting SORNA, Congress had declared that the statute establishes "'a comprehensive national system for the registration of [sex] offenders.'" Id. (quoting 42 U.S.C. § 16901). Based upon that statement of purpose, the Attorney General argued that the statute would not be comprehensive if sex offenders convicted prior July 27, 2006, were excluded from its coverage. Id. That argument does not cause this Court to adopt the Government's construction of subsection 113(d), since the Attorney General has not explained why such offenders could not have been included within the requirements of SORNA, on a nearly immediate basis after its adoption, by the more expeditious adoption of the interim regulation. Congress invested the Attorney General with the discretion to determine whether SORNA should apply to sex offenders convicted prior July 27, 2006. That the Attorney General waited seven months to exercise that discretion means that offenders, such as the Defendant, who allegedly failed to comply with the registration requirements of that statute before February 28, 2007, did not commit a criminal violation in the interim. However, the passage of those seven months does not mean that Congress failed to pass a comprehensive statute.

Based upon its interpretation of subsection 113(d), this Court concludes that the Defendant was not required to comply with the requirements of SORNA until the Attorney General issued the interim regulation on February 28, 2007.

Finally, although there is authority to the contrary, a number of District Courts have, like this Court, concluded that sex offenders convicted before SORNA became effective were not subject to its registration requirements, until the adoption of the interim regulation by the Attorney General on February 28, 2007.[2] See e.g., United States v. Sallee, 2007 WL 3283739 (W.D.Okla. 2007); United States v. Gill, — F. Supp.2d —, 2007 WL 3018909 (D.Utah 2007); United States v. Deese, 2007 WL 2778362 (W.D.Okla. 2007); United States v. Dillenbeck, 2007 WL 2684838 (D.S.C. 2007); United States v. Muzio, 2007 WL 2159462 (E.D.Mo. 2007); United States v. Kapp, 487 F. Supp.2d 536 (M.D.Pa. 2007). See also, United States v. Howell, 2007 WL 3302547 (N.D.Iowa 2007) (Report and Recommendations of Magistrate Judge reaching same conclusion). Those decisions provide further support to this Court's construction of subsection 113(d).

As indicated, the Indictment charges the Defendant with failing to register, as required by SORNA, "between on or about January 18, 2007 and August 22, 2007." See Doc. #11. Since a portion of that period occurred before the Attorney General issued the interim regulation, the Defendant argues that the Court must dismiss the Indictment, because § 113 of SORNA does not create a continuing obligation to register, such that it would require his registration after the Attorney General's interim regulation of February 28, 2007, made SORNA applicable to

---

[2]For instance, among other decisions, the courts in United States v. May, 2007 WL 2790388 (S.D.Iowa 2007), United States v. Templeton, 2007 W.L. 445481 (W.D.Okla. 2007) and United States v. Hinen, 487 F. Supp.2d 747 (W.D.Va. 2007), reached the opposite conclusion to that reached by this Court herein, holding that the registration requirement contained in SORNA became applicable to all sex offenders on its effective date of July 27, 2006.

- 10 -

those whose convictions occurred prior to July 27, 2006. In <u>United States v. Stinson</u>, 507 F. Supp.2d 560 (S.D.W.Va. 2007), the court rejected the argument that a defendant's failure to register creates a continuing violation of § 2250, concluding that "there is nothing in the express language of 42 U.S.C. § 16913(b) or (c) that imposes a continuing duty to register or update a registration should the offender fail to do so within three business days." <u>Id</u>. at 570 (footnote omitted). <u>Accord</u> <u>Sallee</u>, <u>supra</u>. The <u>Stinson</u> court also relied upon <u>Toussie v. United States</u>, 397 U.S. 112 (1970), wherein the Supreme Court held that failure to register for the draft was not a continuing offense and quoted the following passage from that Supreme Court decision:

> There is also nothing inherent in the act of registration itself which makes failure to do so a continuing crime. Failing to register is not like a conspiracy which the Court has held continues as long as the conspirators engage in overt acts in furtherance of their plot. It is in the nature of a conspiracy that each day's acts bring a renewed threat of the substantive evil Congress sought to prevent. The fact that the first draft registrations clearly were viewed as instantaneous events and not a continuing process indicates that there is nothing inherent in the nature of failing to register that makes it a continuing offense.
> We do not mean that the argument in support of implying a continuing offense in this case is insubstantial, but it is at best highly equivocal. Basically we are faced with the task of construing a somewhat ambiguous statute in one of two ways. One way would limit institution of prosecution to a period of five years following the initial violation, while the other could effectively extend the final date for prosecution until as late as 13 years after the crime is first complete. As we have said before:
>> "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication." <u>United States v. Universal C.I.T. Credit Corp.</u>, 344 U.S. 218, 221-222 (1952).

397 U.S. at 122.  See 507 F. Supp.2d at 570 and n. 18.  As did the Stinson court, this Court finds that passage to be persuasive.  Moreover, it agrees with Stinson and Sallee that the language of subsection 113(c) of SORNA, 42 U.S.C. § 16913(c), does not support the conclusion that a failure to register constitutes a continuing offense, so that every day that a defendant fails to register, once the statute becomes applicable to an individual, constitutes a new violation.  On the contrary, the statute merely provides that, "not later than 3 business days after each change of name, residence, employment, or student status," a sex offender must appear in person in a pertinent jurisdiction in to order to inform the jurisdiction of the changed information.  42 U.S.C. § 16913(c).  That provision does not contain language which could be interpreted as imposing a continuing obligation to register, absent a subsequent change of name, residence, employment or student status.  Therefore, assuming the other essential elements of § 2250(a) are established, a defendant's violation of that statute is complete three days after he changes his name, residence, employment or student status.

Accordingly, this Court agrees with the Defendant that he has not been charged with a continuing violation, such that would raise a duty to register after the Attorney General's interim regulation of February 28, 2007, if he arrived in Ohio before that date.

Nevertheless, even though this Court agrees with the Defendant's proposed construction of SORNA and his proposition that the statute does not create a continuing violation, it must overrule his motion.  The parties have stipulated that the Defendant left California for Ohio, after January 18, 2007, but before February 27, 2007.  See Doc. #17 at ¶ 8.  However, they have not indicated when he

arrived in Ohio, stipulating only that he was found in this state on March 6, 2007. Id. at ¶ 10. Consequently, it is possible that the Defendant was subject to the registration requirements of SORNA when he arrived in Ohio, if he did not arrive there until after February 27, 2007. At trial, this Court will take care to stress to the jury that the Defendant cannot be convicted of the offense for which he is being prosecuted, unless he committed each essential element on or after February 28, 2007, i.e., unless he arrived in Ohio on or after that date and failed to register within three days thereafter.

Accordingly, this Court overrules the Defendant's Motion to Dismiss Indictment (Doc. #18).[3]

January 29, 2008

/s/ Walter Herbert Rice
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

---

[3]The Defendant also argues that "[s]hould this Court agree that SORNA did not require [Defendant] to register prior to February 28, 2007, and further agree that [Defendant's] offense was completed within three days after he arrived in the State of Ohio, the Court must then also conclude that [the] offense charged in the Indictment violates the Constitution's prohibition against ex post facto laws." See Doc. #18 at 11. Above, this Court has concluded, as a matter of statutory construction, that the Defendant can be convicted only if he arrived in Ohio on or after February 28, 2007, and he failed to register within three days thereafter. Given that this Court has disposed of this matter on statutory grounds, it is neither necessary nor proper to address the Defendant's constitutional argument predicated upon the Ex Post Facto Clause. See Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) (noting that a court "will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of").

- 14 -

Copies to:

Counsel of Record.